NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.— March, 1880.

MATTER OF RIDGWAY.

*In the matter of the estate of* MARY RIDGWAY, *deceased.*

The will of M. R. gave to trustees the residue of the estate, to be divided into two equal parts for her two grandchildren, the income of their

several portions to be paid to them until they should attain the age of thirty years, when one-half of the principal was to be paid to them respectively, and the income of the balance should be paid to them until they should severally arrive at the age of thirty-five, when the balance of the principal was to become payable. In the event of the death of the grandchildren without issue, before such payment, then the amount unpaid, including income, was directed to be paid to other residuary legatees named. *Held*, that the legal title to the estate vested in the trustees immediately upon the death of the testatrix, and that upon the death of the grandchildren without issue before the time limited for the distribution of the principal, the gifts were vested in those to whom they were upon such contingency limited. (Stinde *v.* Ridgway, 55 *How. Pr.*, 301, followed.)

The will further bequeathed to M. W., one of the grandchildren, all the jewelry, silverware, and wearing apparel of the testatrix, and to both her grandchildren, J. W. and M. W., all her paintings and pictures. *Held*, to be a vested legacy.

The testatrix and her grandchildren, J. W. and M. W., together with the father of the latter, perished in the steamer *Schiller*. They were all in the pavilion upon the deck, after the disaster to the ship. The testatrix was washed out of the pavilion, but the evidence did not disclose whether she was carried out into the sea or to some other part of the deck. The children, with their father, were seen alive in the pavilion some ten or fifteen minutes after the testatrix was swept away. The dead body of testatrix was afterwards recovered, but the remains of the children were never found. *Held*, that the evidence of survivorship of the grandchildren was insufficient.

Where two persons are lost by the same calamity at sea, it does not follow that the one last seen alive is necessarily the survivor.

THE nature of the application and the facts appear sufficiently in the opinion.

JOHN D. TAYLOR *and* S. HEWEIL, *for administrators.*

GEO. C. GENET, *for next of kin*

THE SURROGATE.—In January, 1878, the administrators with the will annexed of the testatrix finally accounted, and by the decree they were ordered to retain in their hands $5,276.92, subject to the further order of this court, on the final determination of the rights of

the parties, together with any other assets then in their hands, as such administrators. Anterior to such decree, and on July 23, 1877, George H. Nichols and another, executors of Charles W. Walter, deceased, and Augustus Stinde and others, were allowed to intervene in said accounting to show their rights to a distributive share of the estate. The said Stinde and others claimed to be the sole heirs-at-law and next-of-kin of Joseph R. and Mary R. Walter, and Charles W. Walter,

It appears that the testatrix and her two grandchildren, Joseph R. and Mary R. Walter, and their father, Charles W. Walter, perished on the steamship *Schiller ;* that they were in the pavilion upon the deck after the disaster to the ship ; that the waves broke over the ship, and testatrix was washed out of the pavilion, but the evidence does not disclose whether she was carried out into the sea, or some other part of the deck ; the disaster occurred at night. The children, with their father, were seen alive in the pavilion some ten or fifteen minutes after the disappearance of the testatrix, when the pavilion with its inmates was swept away. The dead body of the testatrix was afterwards recovered, but the remains of the children were never found.

The parties who have intervened base their claim to this estate upon the alleged survivorship of the children, and claim to have given sufficient evidence of such survivorship.

The will of decedent, among other things, bequeathed to Mary R. Walter all decedent's jewelry, silverware and wearing apparel, and her paintings and pictures to her grandchildren, Joseph R. and Mary R., at the time her executors were directed to take possession of her house

and furniture.   By the residuary clause, she gave to her trustees the residue of her estate, to be divided into two equal parts, for each of her grandchildren, the income to be paid to them respectively, until they should become thirty years of age, when one-half of the principal was to be paid to them respectively, and the income of the balance until they should arrive at the age of thirty-five respectively, when the balance of the principal was to become payable.   In the event of their deaths without issue, before such payment, then the amount unpaid including income, was directed to be paid to other residuary legatees named.

In Newell v. Nichols (12 *Hun*, 604), the will of Elizabeth M. Walter, the mother of Mary R. and Joseph R., was under consideration.   This will contained substantially provisions like that under consideration.   It was held, in this case, in substance, that the legal title to the estate vested in the trustees immediately upon the death of the testatrix, and remained in them until the death of the grandchildren, and that the legal title or interest vested in the grandchildren ; that upon their deaths they had nothing to transmit, and having died without issue, before the time limited for their receiving the principal of the estate, the gifts over vested in those to whom they were upon such contingency limited.   That case went to the Court of Appeals and was affirmed (75 *N. Y.*, 78).   The chief justice, who delivered the opinion of the court, stated that he fully concurred in the opinion and views of the court below.   From the terms of the will, I am not able to perceive any ground of argument in favor of the legacies being vested in the two grandchildren ; for

it seems to me incontrovertible that there was no intention on the part of the testatrix to vest any portion of the corpus of the residuary estate in the grandchildren, in the event of their dying without issue before attaining the age of thirty years. Hence I conclude that the parties intervening have no right to any part of the residuum of the estate. Such seems to be the opinion of Judge VAN VORST also, in Stinde v. Ridgway (55 How. Pr., 301), where the provisions of this will were under consideration.

If this were the only clause of the will to be considered there would be no necessity for passing upon the question of survivorship. But the legacy of the jewelry, &c., was a clear vested legacy, and I am of the opinion that the legacy of the pictures is also a vested legacy; hence it becomes necessary to determine the question of survivorship.

The case of Pell v. Ball (1 Chevès Eq. S. C., 99) is cited by counsel, and also by Judge VAN VORST, in Stinde v. Ridgway, above cited, at page 303. The citation follows the suggestion that the evidence in this case may be sufficient to justify the conclusion that the children survived their grandmother, as they were last seen alive. But the case of Pell v. Ball does not fully support that suggestion, for in that case there was an explosion of one of the boilers of a steamer, in that part of the boat where the husband's berth may have been situated, which explosion resulted in the breaking amidships and the sinking of the boat, and the destruction of many of the passengers, several of whom were killed by the explosion itself. Immediately after the explosion the decedent's wife was heard calling frantically from the

forward deck the name of her husband, which was heard by many of the passengers, but the husband made no answer, and was probably never seen after the explosion. In that case there was an opportunity for the decedent's husband to have been instantly killed by the explosion, and the circumstances seem to warrant that presumption. The facts of the case are to my mind materially different. When two persons are lost by the same calamity, at sea, it does not follow, in my opinion, that the one last seen alive is necessarily or probably the survivor; otherwise a person escaping from a sinking ship by a life-boat might be adjudged to have first perished, because, an instant after, his companion may have been seen on the ship, which immediately thereupon went down with all on board. Indeed, I am of the opinion that it is the general experience of seamen in such a disaster that they are safer at the mercy of the waves, and have a better chance of rescue through the instrumentality of some floating object, than by remaining on the ship until its last plunge. The facts of this case seem to me to indicate the instant and inevitable doom of the children, with hope of rescue or at least some continuance of life on the part of the grandmother. At all events, I am of the opinion that the parties alleging survivorship have not satisfactorily proved the fact.

Ordered accordingly.